NEW YORK PRACTICE REPORTS.        481

Health Department of N. Y. agt. Police Department of N. Y.

# NEW YORK SUPERIOR COURT.

THE HEALTH DEPARTMENT OF THE CITY OF NEW YORK agt.
THE POLICE DEPARTMENT OF THE CITY OF NEW YORK
and others.

*Injunction to protect the board of health of New York in the possession of their
rooms.*

The charter of the city of New York of 1873 prescribes the powers and
duties of the board of health and of the police board.

The provisions made by this law for one department are not in any way
subject to the control of another co-ordinate department, nor can one
be dispossessed from the possession of premises belonging to the city of
New York, by another in possession of other premises so belonging to
the city, by force and without warrant of law.

Where such dispossession is attempted, and it is shown that irreparable
injury may ensue if carried out, a court of equity will stay such pro-
ceedings by injunction.

*Special Term, May*, 1876.

*William P. Prentice*, for plaintiff.

*Charles T. MacLean*, for defendants.

SPEIR, J. — The plaintiff, on the twenty-fifth day of April
last, obtained a temporary injunction to prevent the defend-
ants from forcibly dispossessing the plaintiff from its offices
and rooms in the City Building, 301 Mott street, where it
had been theretofore established. The counsels of the respect-
ive parties appeared before the court, on an order to modify
the injunction, on the twenty-eighth of April, and by con-

sent, after partial argument, adjourned the hearing until the ninth of May when the case was fully argued on the merits.

The facts alleged in the plaintiff's papers are to the effect that, up to the nineteenth of April last, the two boards had had correspondence and interviews with each other in relation to the occupancy by the plaintiff of certain rooms on the first floor of 301 Mott street, which rooms were then and had been before used and occupied by the corps of vaccinators and other employes of the health department; that on the twenty-first of April, Mr. Dilks, an inspector of the police department, with a detachment of four or more officers of that department, in pursuance of an order passed by it on the nineteenth of said April and served upon the president of the health department, entered into and violently took possession of the three offices on the first floor, then occupied by the board of vaccinators, without proper warrant or authority; that the defendants threaten and intend, by the use of physical force, to enter into and assume control and possession of other offices in said building occupied by the plaintiff. At the time of granting the injunction the fact appeared from the papers that the rooms on the first floor were in the joint possession and occupancy of the plaintiff's corps of vaccinators and a small body of police under the orders of the defendants; that such entry and occupation seriously interferes with and interrupts the sanitary work of the plaintiff, and directly tends to obstruct and destroy the efforts of the board of health to promote the public health and to suppress contagious disease; that the president of plaintiff's board has conferred with the mayor, comptroller and other officers of the city for the purpose of obtaining other and suitable accommodations for its use, but has failed to obtain them; that additional rooms have been built, under authority of chapter 806, Laws of 1867, from the surplus funds contributed by the county of New York to the metropolitan police fund which have been constantly in use by the present board of health for its offices and library, and containing

NEW YORK PRACTICE REPORTS. 483

Health Department of N. Y. agt. Police Department of N. Y.

large safes in the walls for the preservation of the books and papers, the records of births, marriages and deaths in the city for the last seventy years; that the third floor of said building is for the use of sanitary superintendent, the secretary, inspectors, the register of records and bureau of vital statistics.

The defendants do not deny any of the foregoing allegations, but respond by what, for brevity and comprehension, may be called a plea of justification. They claim by a superior title to and control of this building in Mott street. They say it was erected in 1862, under the Laws of 1860, chapter 259, section 21, from police funds for police purposes, and that the health department did not enter the building till 1866, and that the addition made under the Laws of 1867, chapter 806, section 5, were from police funds for police purposes.

These funds were moneys of the city and county of New York, made applicable for the purposes of the department, and passed merely by the designation of police funds. The legislature, in chapter 137 of the Laws of 1870, in the act to organize the local government of the city of New York, expressly enacted "that such department (police) should only succeed to and take the property" then in the use or possession of the former police department, and that "subject to the control and superior title therein of the city and county of New York." The plaintiff's rooms were not then in the use and possession of the police department.

It is, I think, too plain for controversy, that whatever rights of property the boards of health and police department have acquired were created by chapter 335 of the Laws of 1873, section 117, whereby the officers of the preceding departments were required "to deliver over to such successors all property of every kind, and all books and papers in their use and possession respectively, belonging to the city or any department thereof." These rooms, known as the health department, 301 Mott street, have not been in the use and possession of the defendant, as appears before me, except in the year

1873 the rooms of the vaccinating corps were used by the defendants, but again taken into possession by the plaintiff in 1874, as they had been by prior boards of health without any agreement to give them up. The title of the building is in the city, and some of the rooms were built especially for the plaintiff. The two departments went into the use and possession of their respective rooms and their offices upon the organization in 1873 as of course. It is to be presumed that as the plaintiff, upon its organization, was installed by the government of the city, which was bound to furnish it a place, was then lawfully there, and has lawfully remained there, and it will also be assumed that the proper and necessary arrangements were then made, and the board of health then acquired rights of which it could not be dispossessed by any one not having a superior title.

The defendants, as we have seen, claim title through the metropolitan board of police, and apparently upon the ground that the whole building, from Mott to Mulberry streets, is called the central office of the police department. No law or authority is shown to sustain this claim but that of the designation of the whole building — not even title by possession, for the whole building has not been occupied by either board since the law of 1873, which prescribes the powers and duties of both boards. The provisions made by this law for one department are not in any way subject to the control of another co-ordinate department, nor can one be dispossessed by another by force and without warrant of law.

The city has the title to the premises in question, erected the buildings, established the two boards in possession, and has furnished the necessary means for carrying on their several allotted work — not for their own benefit or advantage, but for the great good of the people of the city whose public servants they are. The defendants have assumed the responsibility of forcibly entering into one of the apartments of the plaintiff while in the discharge of grave and important duties confided to it by law, subject to city authority, largely affect-

ing public interests, and threaten to eject its officers and employes from their peaceable possession of the remaining apartments. The court is appealed to for protection, and is asked for equitable relief. It is too plain that the general and public interest will suffer irreparable injury should the bureau of health be turned out of doors and be obliged to suspend the active work committed to its hand for a single day. The established rule of a court of equity is, that the court is bound to interfere whenever it has grounds for believing that its interference is necessary to prevent abuse, injustice, oppression, or the violation of a trust.

The injunction must be continued against the defendants.